AE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **JEWEL AMERICA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **07 C 3596** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **COMBINE INTERNATIONAL,** | ) | |
| **INC., and MEIJER, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Jewel America, Inc. has sued Combine International, Inc. and Meijer, Inc. for copyright infringement. Defendants have filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer this suit from this Court to the Eastern District of Michigan. For the reasons provided below, the Court denies the motion.

### Facts

Jewel America, Inc. ("Jewel America"), a New York corporation with its principal place of business in New York, is a jewelry distributor and owner of U.S. copyright registration VA 1-337-340 for a collection of designs entitled "JA COLOR IN CASE COLLECTION." (Compl. ¶¶ 1,7; Pl.'s Opp'n Mot. Transfer at 2.) Defendant Combine, Inc. ("Combine"), a Michigan corporation with its principal place of business in Michigan, is a jewelry supplier. (Compl. ¶ 2; Defs.' Br. Supp. Mot. Transfer at 2.) Defendant Meijer, Inc. ("Meijer"), a Michigan corporation with its principal place of business in Michigan, operates nearly two hundred grocery and general merchandise stores

throughout the Midwest. (Defs.' Br. Supp. Mot. Transfer at 2; *id.*, Ex. 1, Haring Decl. ¶ 2; Compl. ¶ 3.)

Beginning in the early 1990s, Jewelmont, Inc., a company based in Minnesota, supplied Meijer with jewelry. (Pl.'s Opp'n Mot. Transfer at 1-2.) In 1999, Jewel America purchased Jewelmont, Inc. and moved the business from Minnesota to Illinois. (*Id.* at 2.) Jewelmont, Inc. continued to do business with Meijer as Jewel America. (*Id.*)

In 2005, Meijer chose Combine as its sole jewelry vendor and ceased doing business with Jewel America. (*Id.*) After its relationship with Meijer ended, Jewel America told Combine that its work was copyrighted and advised Combine to avoid any infringing activities. (Compl. ¶ 18.) Jewel America contends that Combine and Meijer ignored that advice and has sued them for copyright infringement.

## Discussion

A motion to transfer is governed by 28 U.S.C. § ("section") 1404(a), which says that a district court may, for the convenience of the parties and witnesses and in the interests of justice, "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A section 1404(a) transfer is appropriate only if "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998). Because determining whether transfer is appropriate "involves a large degree of subtlety and latitude," it is "committed

to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

The parties agree that venue and jurisdiction are proper in both this district and in the Michigan court. (Compl. ¶ 6; Defs.' Br. Supp. Mot. Transfer at 5-6.) Because the parties agree that the first two elements are met, the Court confines its analysis to the last factor – whether the transfer will serve the convenience of the parties and the witnesses and the interests of justice.

The party seeking to transfer venue "has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient" than the transferor court. *Coffey*, 796 F.2d at 219-20. In determining whether a transfer should be granted, the Court considers a number of public and private interests. *Medi USA v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992). Private interest factors include: (1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Id.* "Public interest factors relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07 C 4023, 2007 WL 3120011, at *2 (N.D. Ill. Oct. 24, 2007) (quotation omitted).

**Plaintiff's Choice of Forum & Situs of Material Events**

Generally, plaintiff's choice of forum is given substantial weight if he resides in the forum state. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001). If, however, plaintiff does not reside there, or the forum "lacks significant contact with the litigation," plaintiff's choice is accorded less weight. *Id.*

3

Jewel America is a New York corporation with its principal place of business in New York. (Compl. ¶ 1; Pl.'s Opp'n Mot. Transfer at 2.) Nonetheless, Jewel America says that its forum choice should be given deference because its Jewelmont division, which is located in this district, is the only part of the corporation involved in this suit. (Pl.'s Opp'n Mot. Transfer at 4-5.) However, Jewel America, not Jewelmont, is the plaintiff in this suit and the owner of the allegedly infringed copyright. (*See* Compl. Ex. 1, Certificate of Copyright Registration.) Thus, it is Jewel America's domicile, not that of its Jewelmont division, that is relevant for the transfer analysis. *See C. Int'l, Inc. v. Turner Constr. Co*, No. 05 C 1496, 2005 WL 2171178, at *2 (N.D. Ill. 2005) (refusing to "characterize[] [Illinois] as . . . [the] home forum" of Ohio construction company whose Illinois office negotiated the contract underlying the lawsuit). Because Illinois is not Jewel America's home state, its choice of this forum is not accorded great weight.

To determine how much deference is due plaintiff's forum choice, the situs of material events must be considered. This claim arises out of defendants' alleged infringement of plaintiff's copyright for its jewelry designs. Plaintiff says this case has a strong connection to Illinois because Meijer has sold and distributed Combine's allegedly infringing products through its retail stores in this district. But Meijer has retail stores throughout the Midwest, and "sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Sys., Inc. v. R&D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999). Thus, the fact that some of the allegedly infringing products were sold here does not establish a strong connection between Illinois and this case.

Moreover, "[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's principal

place of business is often the critical and controlling consideration." *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott L.P.,* 807 F. Supp. 470, 474 (N.D. Ill. 1992). In this case, the alleged infringers are both located in Michigan, the accused products were designed and manufactured either in Michigan or overseas, and all of the meetings between the defendants regarding the design, manufacture, purchase and sale of the accused products took place in Michigan. (Defs.' Br. Supp. Mot. Transfer at 8-9.) Michigan is, therefore, the situs of the material events underlying this suit.

Because Illinois is not plaintiff's home state and it does not have a strong connection to the case, plaintiff's choice of this forum is not entitled to great deference. Thus, taken together, plaintiff's forum choice and the situs of material events factors weigh in favor of transferring the case to Michigan.

**Relative Ease of Access to Evidence**

Each side argues that the documents on which they will rely are located in the forum it favors. In this age of faxing, scanning and overnight courier services, however, the location of documentary evidence is largely irrelevant. *See Hanley v. Omarc, Inc.,* 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). Because neither party asserts that the non-testimonial evidence needed for trial, if any, is of a nature or quantity that makes it difficult to transport, the access to proof factor is neutral.

**Convenience of Witnesses**

The convenience of the witnesses factor focuses on the non-party witnesses, not the witnesses who are under the control of the parties. *Id.* None of the parties to this case has identified any non-employee witness who is expected to testify. (*See* Defs.' Br. Supp. Mot. Transfer, Ex. 1, Haring

5

Decl.; *id.*, Ex. 2, Parsons Decl.; Pl.'s Opp'n Mot. Transfer, Ex. 1, Leeds Decl.) Thus, the convenience of the witnesses factor is neutral as well.

**Convenience of the Parties**

To evaluate this factor, the Court considers the parties' "respective residences and their ability to bear the expenses of litigating in a particular forum." *Hanley*, 6 F. Supp. 2d at 776. "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party." *Id.* (quotation omitted).

Plaintiff contends that it would be difficult for it to litigate this case in Michigan because its principal witnesses, Rob and Debbi Leeds, are the employees primarily responsible for the Jewelmont division's day-to-day operations. (Pl.'s Opp'n Mot. Transfer, Ex. 1, Leeds Decl. ¶¶ 1-5.) "If Rob and Debbi Leeds [were] to be required to travel to Michigan for this litigation," Jewel America says, "the business of th[e] division could not properly be conducted." (Pl.'s Opp'n Mot. Transfer at 9.)

If the Leedses are Jewel America's key witnesses, they will have to be away from the office for depositions and trial, regardless of the trial's location. Presumably, however, the impact of their absences can be minimized if they remain in this jurisdiction. And, though defendants will be inconvenienced by having to litigate here, they have not demonstrated that doing so will impose a greater burden on them than litigating in Michigan would impose on plaintiff. Thus, the convenience to the parties factor weighs against a transfer.

**Familiarity with Applicable Law**

Copyright infringement is a question of federal law that both courts are competent to decide. Therefore, this factor is neutral.

**Time to Trial**

To determine the relative speed with which the case will be resolved, the Court looks to the Federal Court Management Statistics for "(1) the median months from filing to disposition and (2) the median months from filing to trial." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). According to the most recent Annual Report of the Director on Judicial Business of the United States Courts, the median time from filing to disposition in this district and the Eastern District of Michigan is 5.6 and 4.4 months, respectively. *See* Table C-5, U.S. District Courts: Median Time Intervals from Filing to Disposition of Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2006, *available at* http://www.uscourts.gov/judbus2006/appendices/c5.pdf. The median time from filing to trial in this district and in the Eastern District of Michigan is 25 and 22.5 months, respectively. *See id.* Because the case would proceed at roughly the same pace in either court, this factor is also neutral.

**Relationship to the Community**

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997). Certainly, Illinois has an interest in protecting its citizens from copyright infringement and preventing infringers from operating within its boundaries. But that interest is shared by all of the states in which the allegedly infringing

7

products are sold, including Michigan. Moreover, Michigan – where the alleged infringers are based, the alleged decision to infringe was made, and the allegedly infringing products were manufactured – also has a significant interest in deterring its citizens from committing such illegal conduct. This factor, therefore, militates in favor of transfer.

## Conclusion

The balance of the private and public interest factors in this case do not overwhelmingly favor one court over the other. As a result, the Court cannot say that defendants have satisfied their "burden of establishing . . . that the transfer forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20. Defendants' motion to transfer [doc. no. 12] is, therefore, denied.

**SO ORDERED.**                    **ENTERED:**  *11/30/07*


**RONALD A. GUZMAN**
**United States District Judge**